UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC.,<br>　　　　　Plaintiff,<br>　　v.<br>KONINKLIJKE PHILIPS N.V., et al.,<br>　　　　　Defendants. | Case No. 20-cv-02371-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 20 |

Before the court is defendants Koninklijke Philips N.V. ("Philips") and Philips North America LLC ("PNA" and together with Philips, "defendants") motions to dismiss and transfer. The matter is fully briefed and suitable for resolution without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

**BACKGROUND**

On April 8, 2020, plaintiff Fitbit, Inc. ("Fitbit" or "plaintiff") filed the complaint ("Compl.") in this patent action asserting two causes of action: (1) infringement of U.S. Patent No. 7,145,462 (the "'462 patent") and (2) infringement of U.S. Patent No. 8,868,377 (the "'377 patent"). Dkt. 1. Defendant Philips is a Dutch corporation with its principal place of business in Amsterdam, The Netherlands. Id. ¶ 2. Defendant PNA is a Delaware corporation with its principal place of business in Andover, Massachusetts and is a wholly owned subsidiary of Philips. Id. ¶ 3.

Both Fitbit and Philips are technology companies in the business of producing wearable trackers. Id. ¶¶ 10, 14. The patents-in-suit are related to two such devices.

The '462 patent, entitled "System and Method for Automatically Generating an Alert Message with Supplemental Information," generally claims a system and method for an automated monitoring and response system that is capable of automatically generating an alert message and providing supplemental information to the responder. Id. ¶¶ 7, 18. Plaintiff alleges that Philips makes, uses, offers for sale, sells, and/or imports certain products into the United States, such as the Philips Lifeline system and subscription service that infringe on several claims of the '462 patent. Id. ¶ 22. The '377 patent, entitled "Portable Monitoring Devices and Methods of Operating Same," is generally directed to portable activity monitoring devices to calculate activity by having the device coupled to the body of the user, having at least one tri-axial accelerometer to generate sensor data, and calculating and displaying activity points corresponding to the physical activity of the user. Id. ¶¶ 8, 39. Plaintiff alleges that Philips makes, uses, offers for sale, sells, and/or imports certain products into the United States, such as the Philips Snoring Relief Band, that directly infringes on the '377 patent. Id. ¶ 42.

In addition to the present action, plaintiff and defendants are engaged in several patent lawsuits across the country. PNA has filed suit against Fitbit in the District of Massachusetts, Philips N. Am. LLC v. Fitbit, Inc., No. 19-cv-11586-IT (D. Mass.), asserting infringement of several PNA patents. Philips and PNA jointly requested a patent infringement investigation at the International Trade Commission ("ITC") on patents not at issue in the Massachusetts action. Certain Wearable Monitoring Devices, Systems, and Components Thereof, ITC Investigation No. 337-TA-1190. In April 2020, Fitbit filed a declaratory relief action regarding the patents in the ITC action in the Northern District of California, Fitbit, Inc. v. Koninklijke N.V., No. 20-cv-2246-RS, which Judge Seeborg recently transferred to the District of Massachusetts. Dkt. 20-3.

In the present case, defendant Philips move to dismiss Fitbit's claims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and transfer to the District of Massachusetts pursuant to 28 U.S.C. § 1631. In the alternative, Philips and PNA request the court transfer the case pursuant to 28 U.S.C. § 1404. Finally, both

defendants move to dismiss portions of Fitbit's claims pursuant to Rule 12(b)(6).

## DISCUSSION

**A.   Legal Standard**

   **1.   Rule 12(b)(2)**

A federal court may dismiss an action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Because plaintiff brings patent infringement claims, the court applies Federal Circuit precedent to the personal jurisdiction analysis. Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1016 (Fed. Cir. 2009) (citation omitted). When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in plaintiff's favor. Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citing Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003)).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see Fed. R. Civ. P. 4(k)(1)(a). California's long arm statute permits exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution, Cal. Code Civ. Proc. § 410.10, therefore "our jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." Avocent, 552 F.3d at 1329. Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted) (citations omitted). Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction." Daimler, 571 U.S. at 121–22 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

In the absence of general jurisdiction, a court may exercise specific jurisdiction over a defendant if its less-substantial contacts with the forum give rise to the claim or

claims pending before the court—that is, if the cause of action "arises out of" or has a substantial connection with that activity. Hanson v. Denckla, 357 U.S. 235, 250–53 (1958); see also Goodyear, 564 U.S. at 924–25. The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (citation omitted).

To determine whether a defendant's contacts with the forum state are sufficient to establish specific jurisdiction, the Federal Circuit employs a three-part test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" Xilinx, Inc. v. Papst Licensing Gmbh & Co. KG, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (quoting Inamed v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). Plaintiff "bears the burden of affirmatively establishing the first two elements of the due process requirement." Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1378 (Fed. Cir. 2015) (citing Elecs. for Imaging, 340 F.3d at 1350). If plaintiff meets the burden, the burden shifts to defendants to prove that personal jurisdiction is unreasonable. Id. (citing Elecs. for Imaging, 340 F.3d at 1350).

### 2. Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In deciding a motion to transfer venue, the district court must consider each of the factors enumerated in § 1404(a)—whether the action could have been brought in the proposed transferee district, the convenience of the parties, the convenience of the witnesses, and the interests of justice. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000). The moving party has the burden to show that the action should be transferred under § 1404(a). Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

If the action could have been brought in the transferee venue, the court then must determine if the defendant has made a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum" by considering private factors relating to "the convenience of the parties and witnesses" and public factors relating to "the interest of justice," including "the administrative difficulties flowing from court congestion and [the] local interest in having localized controversies decided at home." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (internal quotation marks omitted). The district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498 (citing Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

Courts in this district commonly examine the following factors to determine convenience and fairness under § 1404(a): (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the ease of access to the evidence, (5) the familiarity of each forum with the applicable law, (6) the feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citation omitted); see Jones, 211 F.3d at 498–99. Courts may examine all these factors, but "[n]o single factor is dispositive." Ctr. for Biological Diversity v. Kempthorne, No. C 08-1339 CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing Stewart Org., 487 U.S. at 29). Instead, the weighing of the factors for and against transfer is best left to the discretion of the trial judge. Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th Cir. 2007) (citation omitted).

**B.  Analysis**

    **1.  Specific Jurisdiction**

Defendants argue that Philips lacks connections to California such that specific jurisdiction is not appropriate. Mtn. at 6–7. To controvert the allegations in the complaint, defendants provide a declaration from a senior executive at Philips stating that Philips does not operate any manufacturing, sales, or distribution businesses in the United

5

States, it is not registered to do business in California, and does not employ any personnel who work on a full-time basis in California. Declaration of Loes Meerburg ("Meerburg Decl."), Dkt. 20-1, ¶¶ 2–3, 5. Philips does not have any day-to-day management or control over the activities of its subsidiaries and any company in California affiliated with Philips has its own separate board members and executives. Id. ¶ 8. Philips licenses at least three patents to entities in the United States, but Philips does not control the businesses of those licensees. Id. ¶ 9.

Plaintiff contends that, notwithstanding defendants' declaration, defendants' ITC complaint represented that Philips and its subsidiary PNA "collectively include" the Philips Lifeline business unit, which in turn is responsible for the Lifeline products that allegedly infringe on Fitbit's patents. Opp. at 5–6. The ITC complaint defined the term "Philips" as both Koninklijke Philips N.V. and Philips North America LLC and alleged that "Philips" "engaged in a broad range" of "domestic industry activities in the United States directed to articles" including Lifeline products. Dkt. 20-4, ¶ 237. Thus, according to Fitbit, defendants have admitted that Philips includes the business unit responsible for the infringing products. Opp. at 6.

The court begins by observing that the only basis upon which plaintiff asserts specific jurisdiction is the fact that Philips and PNA together control the Philips Lifeline business unit, which is responsible for the allegedly infringing Lifeline products. If Philips controls the business unit, then it is the entity that directed activities at the forum such that it meets the first prong for specific jurisdiction. In support of this proposition, Fitbit offers its own allegations in the complaint and defendants' allegations in the ITC complaint. The former alleges that Philips (defined as both the Dutch Philips and its U.S. subsidiary) "has committed and continues to commit acts of infringement within the State of California . . . " Compl. ¶ 5. The latter purportedly represents that Philips is a combination of both the Dutch Philips entity and its U.S. subsidiary.

Plaintiff has not carried its burden to establish that Philips—as opposed to its subsidiaries—purposefully directed its conduct towards California. The complaint alleges

6

that the Dutch Philips and American Philips entities committed and continue to commit acts of infringement in California. Compl. ¶ 5. Defendants have controverted that allegation with a declaration from one of Philips' executives stating that Philips does not control its American subsidiary, its subsidiaries have separate board members and executives that do not overlap with Philips' board, and Philips licenses its patents but does not control the businesses of the licensees. This declaration is sufficient to refute plaintiff's allegations and demonstrates that Philips is a separate entity from its U.S.-based subsidiaries and Philips does not control the businesses of its patent licensees, which includes the patents at issue.

The Federal Circuit has cautioned that "the corporate form is not to be lightly cast aside" and "the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1380 (Fed. Cir. 1998). "For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory. In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party." Celgard, 792 F.3d at 1379 (citing Daimler, 571 U.S. at 135 n.13). Again, the Meerburg declaration states that Philips "does not have day-to-day management or control over the activities of any subsidiary in California. No subsidiary in California is directly owned by Royal Philips. Any company in California that is affiliated with Royal Philips has its own separate board members and executives who are not board members or executives of Royal Philips." Meerburg Decl. ¶ 8.

The only evidence plaintiff points to is defendants' complaint before the ITC that Philips and PNA collectively include the Lifeline products, which plaintiff contends is the exact opposite of the Meerburg declaration. In support of plaintiff's position, the ITC complaint states "[c]omplainants Philips North America LLC and Koninklijke Philips N.V. collectively include the separate business units described above: Philips Lifeline, Philips Connected Sensing, Philips Motion Biosensor, and Philips Sleep Diagnostics." Dkt. 20-4,

7

¶ 23. Yet, additional allegations indicate that the business units operate independently. The ITC complaint alleges "[e]ach business unit operates independently within Philips, with each having its own offices, leadership[,] and employees." Id. ¶ 8.

It should be noted that Philips owns several patents and licenses those patents to entities in the United States. Meerburg Decl. ¶ 9. Yet, in prior cases, the Federal Circuit has "rejected the notion that an agency relationship existed between the defendant and its licensees [when] the defendant did not exercise control over the licensees." Celgard, 792 F.3d at 1379 (citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1362 (Fed. Cir. 1998)). Similarly, Philips' declarant states that "Philips does not control the businesses of the licensees, who sell their own products and services according to their own business plans." Meerburg Decl. ¶ 9. Plaintiff does not point to any evidence (outside of the ITC complaint) that would establish that any of Philips' U.S.-subsidiaries operates as either its agent or alter ego.

Accordingly, plaintiff has not carried its burden to show that Philips purposefully directed its activities at residents of the forum state. Because plaintiff fails to establish the first prong of the specific jurisdiction test, the court need not assess the remaining elements.

### 2. Rule 4(k)(2)

Plaintiff alternatively argues that Rule 4(k)(2) applies and provides for personal jurisdiction over Philips. Opp. at 7. Rule 4(k)(2) permits federal courts "to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009) (footnote omitted). The first element is clearly met as plaintiff's patent infringement claims arise under federal law. See 28 U.S.C. §§ 1331, 1338.

#### a. Rule 4(k)(2)(A)

The second element, termed the "negation requirement," requires that a defendant

"must not be subject to personal jurisdiction in the courts of any state." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1294 (Fed. Cir. 2012). The Federal Circuit uses a burden-shifting mechanism such that defendants, rather than plaintiff, have the burden to show Philips is subject to suit in a different forum. In other words, "[a] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1414 (Fed. Cir. 2009) (quoting ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001)). Conversely, if "the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." Id. at 1415 (quoting ISI Int'l, 256 F.3d at 552).

In their motion, defendants identify the district court for the District of Massachusetts as the alternative forum and state that Philips consents to personal jurisdiction in that court. Mtn. at 5. Despite this consent, plaintiff argues that defendants have failed to identify any other state where Philips is subject to the jurisdiction of the state courts of general jurisdiction, as opposed to a federal court. Opp. at 8. Plaintiff contends that the plain language of Rule 4(k)(2)(A) requires Philips to identify a "state's courts of general jurisdiction," which defendants have not done and refuse to do. Id. at 9.

Defendants respond that, according to the 1993 Advisory Committee Notes, Rule 4(k)(2) was meant to correct a gap in federal law where a foreign defendant with sufficient contacts with the United States but insufficient contacts with any one state, for purposes of personal jurisdiction, could avoid enforcement of federal law. Reply at 4. According to defendants, the phrase "state's courts of general jurisdiction" means that if a state's long arm statute is satisfied and the federal court can exercise personal jurisdiction pursuant to the long arm statute, then Rule 4(k)(2)(A) is negated. Id.

An appropriate starting place for this analysis is Rule 4(k)(1)(A) because it uses similar language as Rule 4(k)(2). See United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 39 (1st Cir. 1999) (noting that "the two subparts of Rule 4(k) must be read in pari materia"). Rule 4(k)(1)(A) provides: "Serving a summons or filing a waiver of service

establishes personal jurisdiction over a defendant: who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ." Fed. R. Civ. P. 4(k)(1)(A). In evaluating personal jurisdiction under Rule 4(k)(1)(A) a federal court "borrows and applies the applicable long-arm statute and governing principles from the forum state." Touchcom, 574 F.3d at 1410 (quoting CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 (4th Cir. 2009)). Additionally, "federal courts routinely have determined whether state courts would have personal jurisdiction over a defendant, even in cases of exclusive federal jurisdiction." Swiss Am. Bank, 191 F.3d at 39 (citing Janmark, Inc. v. Reidy, 132 F.3d 1200, 1201 (7th Cir. 1997), abrogated on other grounds by Walden, 571 U.S. at 284).

Rule 4(k)(2) contains similar language as Rule 4(k)(1)(A). It provides: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: the defendant is not subject to jurisdiction in any state's courts of general jurisdiction . . . ." Fed. R. Civ. P. 4(k)(2). The purpose of Rule 4(k)(2) was to remedy a perceived gap in federal law:

> Under the former rule, a problem was presented when the defendant was a nonresident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation . . . . In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule.

Advisory Committee Notes Accompanying the 1993 Amendments to the Federal Rules of Civil Procedure. The First Circuit has offered a similar explanation:

> Before Rule 4(k)(2) was conceived, federal courts "borrowed" from state law when a federal statute did not otherwise provide a mechanism for service of process (regardless of the state courts' subject matter jurisdiction). Accordingly, foreign defendants who lacked single-state contacts sufficient to bring them within the reach of a given state's long-arm statute (whether by reason of the paucity of the contacts or of limitations built into the statute itself), but who had enough contacts with the United States as a whole to make personal

10

> jurisdiction over them in a United States court constitutional, could evade responsibility for civil violations of federal laws that did not provide specifically for service of process.

Swiss Am. Bank, 191 F.3d at 40 (citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 111 (1987)).  In other words, "[t]he advisory committee was concerned with defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States." Touchcom, 574 F.3d at 1415.

Because the two subparts of Rule 4(k) both use the similar language—"subject to the jurisdiction of a court of general jurisdiction in the state were the district court is located" and "not subject to jurisdiction in any state's court of general jurisdiction"—the Rule 4(k)(2)(A) inquiry is best understood in light of the Rule 4(k)(1)(A) analysis.  In the same way that a federal district court "borrows" a forum state's long-arm statute and governing principles for Rule 4(k)(1)(A), a court "borrows" the jurisdiction of a state's court of general jurisdiction to determine whether, under Rule 4(k)(2)(A), a defendant would be subject to personal jurisdiction in that state.  In that sense, plaintiff is entirely correct that the plain meaning of Rule 4(k)(2)(A) requires the court to determine whether a defendant is subject to jurisdiction in any state's court of general jurisdiction.

Yet, it does not follow that, in order for the court to evaluate whether a defendant meets its burden-shifting requirement mandated by Touchcom and Rule 4(k)(2)(A), defendants must nominate a state court of general jurisdiction rather than a federal district court.  Defendants nominated the District of Massachusetts and there is no obvious reason why a federal district court would not "borrow" the Commonwealth of Massachusetts' long-arm statute and governing principles to determine whether the state court of general jurisdiction would have personal jurisdiction over Philips.  This analysis is especially relevant where, as here, a federal district court has exclusive subject matter jurisdiction[1] over plaintiff's claims.  Cf. Swiss Am. Bank, 191 F.3d at 39 ("Under [Rule

---

[1] Title 28 U.S.C. § 1338(a) vests original jurisdiction for patent actions in federal district courts and further provides that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . ."

11

4(k)(1)], federal courts routinely have determined whether state courts would have personal jurisdiction over a defendant, even in cases of exclusive federal jurisdiction."). In short, regardless of whether defendants consented to the "District of Massachusetts" or "Massachusetts" the analysis is the same—i.e., whether defendants designated a suitable forum in which plaintiff could have brought suit.

Plaintiff next argues that defendants' consent, which was made in the motion itself, is insufficient because, according to Merial, defendants must show that there is "a forum where jurisdiction would have been proper at the time of filing, regardless of consent." Opp. at 11 (quoting Merial, 681 F.3d at 1294–95). Fitbit asserts that even though that statement in Merial was dicta, the Federal Circuit was simply applying the holding of Touchcom, which defendants admit is controlling. Id. Plaintiff argues that Philips has refused to say that it is subject to jurisdiction in Massachusetts other than its consent to litigate this case and, therefore, cannot show jurisdiction in Massachusetts would have been proper at the time of filing of Fitbit's complaint. Id. at 12–13. Defendants respond that the Merial court's dicta was "thoroughly discredited and narrow" and contend that plaintiff has failed to articulate an argument why post-suit consent to personal jurisdiction should not negate Rule 4(k)(2). Reply at 5.

In Merial Ltd. v. Cipla Ltd., 681 F.3d at 1294, the Federal Circuit examined whether Rule 4(k)(2) supported personal jurisdiction against a foreign defendant seeking to overturn a default judgment by consenting, at a later stage, to personal jurisdiction in an alternate forum. When discussing the negation requirement, the court stated a defendant can "avoid the application of [Rule 4(k)(2)] only when it designates a suitable forum in which the plaintiff could have brought suit." Id. (alteration in original) (quoting Touchcom, 574 F.3d at 1415). In other words, "a defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent." Id.

The parties dispute whether Merial forecloses defendants' post-filing consent to

12

personal jurisdiction in a district court. As plaintiff points out, the Merial court was concerned that post-filing consent, by itself, was not sufficient to demonstrate that a plaintiff could have brought suit in that court. See id. ("The district court correctly concluded that [defendant's] ex post consent to suit in the Northern District of Illinois was not independently sufficient to prevent it from exercising personal jurisdiction under Rule 4(k)(2)."). However, the Merial court expressly declined to apply its reasoning to cases beyond default judgment, stating "we need not decide today the general requirements for a defendant to prevent the application of Rule 4(k)(2) by consenting to suit in another jurisdiction . . . ." Id. at 1295.

Moreover, the same considerations present in Merial are not present here. The defendant in Merial sought not only to transfer to a different forum but also to overturn a prior default judgment by naming such an alternative forum. As the Federal Circuit reasoned:

> the incentives for gamesmanship under a contrary rule would be particularly acute in such cases because the defaulting party could use a simple, unilateral statement of consent not only to achieve transfer into a forum it considers more convenient (or less convenient for its opponent), but also to undo an adverse final judgment for the chance to litigate from a clean slate.

Merial, 681 F.3d at 1295 (citation omitted). As Judge Seeborg noted in his order granting defendants' motion to dismiss, "[t]he same 'gamesmanship' risk does not exist in the present case, because Philips is not avoiding litigation . . . . Philips is not attempting to evade jurisdiction in U.S. federal courts." Dkt. 20-3, at 5–6.

This is a close question, but the deciding factor here is the Federal Circuit's articulation of the primary rationale behind Rule 4(k)(2): "[t]he advisory committee was concerned with defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States." Touchcom, 574 F.3d at 1415. Philips has consented to jurisdiction in a federal court and, therefore, answers the overriding concern behind Rule 4(k)(2). Because this is a close question, however, the court does not rest its finding exclusively on whether defendant has met its burden to demonstrate Rule

13

4(k)(2) does not apply. Rather, even if the court were to agree with Fitbit that Rule 4(k)(2)(A) applies here, plaintiff has failed to meet its burden under Rule 4(k)(2)(B).

### b. Rule 4(k)(2)(B)

The third requirement of Rule 4(k)(2) is whether exercising jurisdiction is consistent with the United States Constitution and laws. The Federal Circuit has explained that this element assesses "a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." Synthes, 563 F.3d at 1295. "As with personal jurisdiction in a forum state, personal jurisdiction pursuant to Rule 4(k)(2) must be based on either general or specific jurisdiction." Am. GNC Corp. v. GoPro, Inc., No. 18-CV-00968-BAS-BLM, 2018 WL 6074395, at *6 (S.D. Cal. Nov. 6, 2018) (citations omitted).

Defendants argue that several facts support negating Rule 4(k)(2) as a matter of fair play and substantial justice including: the litigants are already in parallel litigation in other forums, including Massachusetts; Massachusetts is the clear "locus" for this case; Fitbit could have conferred with Philips before filing the suit but chose not to for tactical reasons; and Fitbit used Rule 4(k)(2) to forum shop. Mtn. at 15. Plaintiff argues that Philips does not address its minimum contacts with the United States and tries to distract from that issue by arguing that Fitbit is engaging in "improper tactical objectives" by avoiding a "more logical forum." Opp. at 15–16.

Fitbit faces a more immediate problem than Philips failing to address minimum contacts or any purported distractions because Fitbit, rather than defendants, has the burden to demonstrate that Philips' contacts with the United States support either specific or general jurisdiction. Plaintiff presents no such facts other than those already discussed with regard to specific jurisdiction in California. Plaintiff has established that PNA has sufficient contacts with the United States, but, as previously discussed, Philips is a separate corporate entity and plaintiff has not put forward a reason—whether by an agency or alter ego theory—to impute PNA's contacts to Philips. In fact, other than Philips' prosecution of the ITC case and its defense of two patent cases (this case and

1  the case transferred by Judge Seeborg to the District of Massachusetts), plaintiff adduces

2  no further contacts with the United States.[2]

3  Thus, considering Philips' contacts with the United States as a whole, plaintiff has

4  not made a prima facie showing that Philips is subject to the personal jurisdiction of this

5  court under Rule 4(k)(2).

### 3. Jurisdictional Discovery

In passing, plaintiff requests limited jurisdictional discovery on the basis of Philips' contradictory statements in the Meerburg declaration and the ITC complaint. Opp. at 5 n.1. Defendants oppose this request, arguing that there is nothing contradictory about the Meerburg declaration. Reply at 3.

A district court has "broad discretion" to permit or deny discovery to aid in determining whether it has personal jurisdiction. See Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986); see also Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008). Discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (citations omitted).

In this district, courts have generally held that "a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery." Corcera Sols., LLC v. Razor, Inc., 2014 WL 587869 at *3 & n.25 (N.D. Cal. Feb. 14, 2014) (collecting cases); Calix Networks, Inc. v. Wi–Lan, Inc., 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010). Where further discovery on an issue "might well" demonstrate facts sufficient to constitute a basis for jurisdiction, it is an abuse of discretion to deny it. Harris Rutsky & Co. Ins. Serv. v. Bell & Clements, 328 F.3d 1122, 1135 (9th Cir. 2003).

However, denial of discovery "is not an abuse of discretion when it is clear that

---

[2] These cases, while involving the same parties, appear to be based on separate transactions or occurrences. Thus, even if the court were to consider litigating a separate patent case in the United States as a contact, the present action does not arise out of or relate to those contacts.

United States District Court
Northern District of California

further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery. . . ." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006) (alterations in original) (citation omitted).

Here, plaintiff has produced no evidence outside its own bare allegations and defendants' ITC complaint. While the ITC complaint states that "Philips North America LLC and Koninklijke Philips N.V. collectively include the separate business units described above: Philips Lifeline, Philips Connected Sensing, Philips Motion Biosensor, and Philips Sleep Diagnostics," (Dkt. 20-4, ¶ 23), it does not warrant jurisdictional discovery for a few reasons. First, the evidentiary value of a complaint, even one drafted by defendants, is not as compelling as the specific denials made in a declaration. Second, in their reply, defendants put forward an explanation regarding the ITC complaint that the court finds persuasive. Third, the ITC complaint describes how the domestic business units operate independently within Philips, with each having its own offices, leadership, and employees. Id. ¶ 8. Based on these reasons, plaintiff's personal jurisdictional claim appears to be both attenuated and based on bare allegations that defendants refuted with specific denials.

In sum, jurisdictional discovery is not warranted and the court GRANTS defendant Philips' motion to dismiss for lack of personal jurisdiction. Defendants request that, instead of dismissing the action, the court transfer the case to the District of Massachusetts pursuant to 28 U.S.C. § 1631. Mtn. at 1. Plaintiff contends that if the court determines it does not have personal jurisdiction over Philips, then it should still retain personal jurisdiction over PNA. Opp. at 17. "Where personal jurisdiction is lacking, courts within this district have variously transferred actions under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631." Theos Med. Sys., Inc. v. Nytone Med. Prod., Inc., No. 19-CV-01092-VKD, 2020 WL 500511, at *9 (N.D. Cal. Jan. 31, 2020) (citations and footnotes omitted).

"Under either statute, cases generally should be transferred if a transfer serves the interest of justice." Id. (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962)). Transfer would serve the interest of justice here.  Defendant Philips has consented to transfer and Judge Seeborg has already transferred a related patent action between the same parties to the District of Massachusetts.

### 4. Motion to Transfer

#### a. Whether Plaintiff Could Have Initiated this Action in the District of Massachusetts

Notwithstanding the court's finding of no personal jurisdiction over Philips, transfer pursuant to 28 U.S.C. § 1404 is also warranted as to both Philips and PNA.  "In determining whether an action might have been brought in a district, the court looks to whether the action initially could have been commenced in that district."  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).  In this case, defendants' post-filing consent to transfer to the District of Massachusetts has no impact on whether this case could have originally been brought in the District of Massachusetts.  See Hoffman v. Blaski, 363 U.S. 335, 342–43 (1960) ("We do not think the § 1404(a) phrase 'where it might have been brought' can be interpreted to mean . . . 'where it may now be rebrought, with defendants' consent.'").  Rather, it appears that plaintiff's theory of personal jurisdiction—predicated on defendants committing acts of infringement in the State of California or, in the alternative, in the United States (under Rule 4(k)(2))—would apply equally to the District of Massachusetts because defendants ostensibly committed acts of infringement in Massachusetts and PNA is headquartered in that district.  See Orbital Australia Pty Ltd v. Daimler AG, No. 3:14-cv-808, 2015 WL 4042178, at *2 (E.D. Va. July 1, 2015) (finding, with regard to patent infringement claims, that "if personal jurisdiction is proper in the Eastern District of Virginia . . . then personal jurisdiction would have been proper in the Eastern District of Michigan").  In terms of venue, Philips, as a foreign entity, may be sued in any judicial district.  28 U.S.C. § 1391(c)(3).  Thus, plaintiff could have brought this action in the District of Massachusetts.

### b. Transfer Would Advance the Interests of Justice

With regard to the convenience factors, the court notes that, following Judge Seeborg's order transferring his case, two patent cases involving the parties in this case are already in the District of Massachusetts. Significantly, consolidating this action with those cases in one fora serves to further the interests of justice. See Pit River Tribe v. Bureau of Land Mgmt., No. 19-CV-02002-PJH, 2019 WL 6341566, at *6 (N.D. Cal. Nov. 27, 2019) ("Transfer is proper if a like action has been brought by the same plaintiff against the same defendant in another district, or another division of the same district." (quoting Wireless Consumers All., Inc. v. T-Mobile USA, Inc., No. C 03-3711 MHP, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003))).

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under section 1404(a)." Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (citation omitted). The court agrees with plaintiff that, typically, the moving party must name the witnesses, state their location, and explain their testimony and its relevance. Carolina Cas. Co. v. Data Broad. Corp., 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001) (citation omitted). Defendants have made no attempt to identify witnesses with any particularity. See Mtn. at 18. This factor is neutral as defendants have not met their burden. However, to the extent that any witnesses between these actions overlap, then this factor would weigh in favor of transfer.

With respect to convenience of the parties, both parties have locations in both this district and the District of Massachusetts. See Mtn. at 18; Opp. at 18. While this factor might otherwise be neutral, the pending actions in the District of Massachusetts again impacts this factor. Thus, to the extent the parties can avoid wasting resources litigating in different judicial districts, this factor cuts in favor of transfer.

Next, Fitbit states that it is headquartered in this district and three out of five inventors reside in California and argues its choice of forum is entitled to great deference. Opp. at 17. While a plaintiff's choice of forum is normally entitled to "substantial weight,"

Williams, 157 F. Supp. 2d at 1106, "district courts have applied a 'general rule' that, in actions based on a claim of patent infringement, a plaintiff's choice of forum is accorded little deference where the central facts of the lawsuit occur outside the plaintiff's chosen forum," Sorensen v. Daimler Chrysler AG, No. C 02-4752 MMC (EDL), 2003 WL 1888866, at *3 (N.D. Cal. Apr. 11, 2003) (citation omitted). In such circumstances, "the preferred forum is that which is the center of the accused activity," defined as the "forum where the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product." Sorensen, 2003 WL 1888866 at *3 (citation omitted). Defendants contend that the accused Lifeline products were designed and developed at PNA's headquarters in Massachusetts. Mtn. at 17. Plaintiff does not contest this point, instead arguing that it overlooks Fitbit's activities in inventing the patent. Opp. at 18. However, the accused activity does not relate to Fitbit's activities but to defendants' activities. Accordingly, to the extent plaintiff's choice of forum is entitled to any deference, such deference is minimal.

The remaining factors are neutral. Neither this district nor the District of Massachusetts have any relative advantage regarding accessibility of evidence. See Cooper v. Curallux LLC, No. 20-CV-02455-PJH, 2020 WL 4051466, at *4 (N.D. Cal. July 20, 2020) (discussing how electronic accessibility of documents reduces the burden concerning accessibility of evidence). Both courts know and are able to apply federal patent law. Since both parties have locations in both this district and the District of Massachusetts, any local interest in the controversy is neutral.

For the foregoing reasons, the court GRANTS defendants' motion to transfer. Because the court determines that it does not have personal jurisdiction over Philips and further determines that transfer of the entire action to the District of Massachusetts is appropriate, the court does not reach defendants' Rule 12(b)(6) motion to dismiss.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant Philips' motion to dismiss for lack of personal jurisdiction and GRANTS defendants Philips and PNA's motion to

transfer.  The clerk shall transfer this action to the United States District Court for the District of Massachusetts.

**IT IS SO ORDERED.**

Dated: August 26, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge